

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N F O R M A T I O N |
| | ) | |
| Plaintiff, | ) | CASE NO. **1:13CR167 1** |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH M. PALAZZO, | ) | JUDGE **JUDGE PEARSON** |
| | ) | |
| Defendant. | ) | Title 18, United States Code §§ 1343, 1349 |
| | ) | and 1956(h) |
| | ) | |

The United States Attorney charges:

**<u>General Allegations</u>**

At all times material and relevant to this Information:

1.      Defendant JOSEPH M. PALAZZO ("JOE PALAZZO") was a resident of

Independence, Ohio, which is located in the Northern District of Ohio, Eastern Division.   JOE

PALAZZO was employed by the Cuyahoga Heights School District (the "District") as its

Information Technology ("IT") Director.   In that capacity, JOE PALAZZO was responsible for

managing the District's IT Department, and his responsibilities included purchasing hardware and

software and making other IT expenditures to benefit the District and its students.

2

2.    A person described herein as "Shell Vendor Owner ("SV Owner") #1" was the owner of "Shell Vendor Company ("SV Company") #1," an Ohio corporation that he originally established under another name for other purposes, and used as described herein.   At JOE PALAZZO's suggestion, SV Owner #1 also incorporated two other Ohio-based entities, "SV Company #2" and "SV Company #3."   SV Owner #1 established corporate bank accounts for all three companies.

3.    A person described herein as "SV Owner #2" was a personal friend of JOE PALAZZO and SV Owner #1.   At JOE PALAZZO's suggestion, SV Owner #2 incorporated SV Company #4 in Ohio and also established one or more related corporate bank accounts.

4.    A person described herein as "SV Owner #3" was a personal friend and former business partner of SV Owner #1.   At the suggestion of JOE PALAZZO and SV Owner #1, SV Owner #3 incorporated "SV Company #5" in Ohio and established one or more related corporate bank accounts.

5.    Business #1 was a business located in Northeast Ohio open to the public.   It was opened and operated by SV Owner #1 and SV Owner #2.

The United States Attorney further charges:

## COUNT 1
### (Conspiracy to Commit Mail Fraud, 18 U.S.C. § 1341, in violation of 18 U.S.C. § 1349)

6.    Paragraphs 1 through 5 of this Information are realleged and incorporated by reference as if fully set forth herein.

7.    From on or about January 12, 2007, and continuing through on or about February 14, 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, JOE

3

PALAZZO and others known and unknown to the United States Attorney, did knowingly and

voluntarily combine, conspire, confederate, and agree together and with each other to commit

offenses against the United States of America, that is, to devise and intend to devise a scheme and

artifice to defraud the District and to obtain money and property from it by means of false and

fraudulent pretenses, representations, and promises, and for the purpose of executing and

attempting to execute such scheme and artifice to defraud, knowingly placed and caused to be

placed in any post office and authorized depository for mail matter, any matter or thing, to be

delivered by the Postal Service and any private and commercial interstate mail carrier according to

the direction thereon, in violation of Title 18, United States Code, Section 1341.

## Object of the Conspiracy

8.     The object of the conspiracy was to divert millions of dollars of District funds to

personal use by submitting to the District for payment false invoices that purported to be for goods

and services purchased by the District's IT Department to benefit the District from legitimate

companies when, in truth and in fact, those companies were owned by various coconspirators,

were used as "shells," and did not in fact supply such goods to or perform such services for the

District.

## Manner and Means

9.     It was part of the conspiracy that SV Owner #1, SV Owner #2, and SV Owner #3

incorporated various companies in the State of Ohio that did not in fact manufacture, supply, or

sell any goods or services; and that SV Owner #1, who incorporated the predecessor company to

SV Company #1 for other purposes, changed the company's name to "SV Company #1" and used

it in connection with claims that SV Company #1 had manufactured, supplied, or sold goods or

4

services to the District when in fact it had not.   (These companies are collectively referred to

herein as "Shell Vendor Corporations.")

10.     It was further part of the conspiracy that JOE PALAZZO prepared false invoices

that stated that the Shell Vendor Corporations had provided IT-related goods and services to the

District when, in fact, the Shell Vendor Corporations had not provided the District with any such

goods or services.

11.     It was further part of the conspiracy that JOE PALAZZO represented that the

invoices were legitimate and approved the false invoices himself or forged the signature of another

in the approval section.   These invoices – which often contained vague descriptions and

misspellings of the items or services purportedly purchased, and fictitious descriptions of

nonexistent hardware or software – were for services never performed, fictitious software and

hardware, and software and hardware never received or already purchased by the District from

another source.   JOE PALAZZO submitted the false invoices to the District for payment, and

caused checks to be issued to the Shell Vendor Corporations.

12.     It was further part of the conspiracy that JOE PALAZZO delivered District checks

made payable to the Shell Vendor Corporations to SV Owner #1, SV Owner #2, and SV Owner #3.

13.     It was further part of the conspiracy that SV Owner #1, SV Owner #2, and SV

Owner #3 established bank accounts in the names of the Shell Vendor Corporations to receive

funds.

14.     It was further part of the conspiracy that SV Owner #1, SV Owner #2, and SV

Owner #3 deposited District checks into the Shell Vendor Corporations' bank accounts, kept

approximately half the funds for their own use, and returned the remainder of the funds to JOE

PALAZZO via check or cash for his personal use.

5

**Acts In Furtherance of the Conspiracy**

15.     In or around January 2007, SV Owner #1 renamed an existing business, which he had previously established, as SV Company #1.

16.     Between on or about January 12, 2007, and in or around January 2011, JOE PALAZZO caused the District to issue more than 60 checks totaling approximately $526,859.00 to SV Company #1 for products and services the District never received.

17.     Between on or about January 12, 2007, and in or around January 2011, SV Owner #1 deposited more than 60 checks totaling approximately $526,859.00 into SV Company #1's business bank accounts at National City Bank ("NCB")[1] and Chase Bank.

18.     In or around August 2007, SV Owner #1 incorporated SV Company #2.

19.     Between in or around September 2007 and in or around January 2011, JOE PALAZZO caused the District to issue more than 150 checks totaling approximately $1,629,472.36 to SV Company #2 for products and services the District never received.

20.     Between in or around September 2007 and in or around January 2011, SV Owner #1 deposited more than 150 checks totaling approximately $1,629,472.36 into SV Company #2's business bank accounts at NCB and Chase Bank.

21.     In or around February 2008, SV Owner #3 incorporated SV Company #5.

22.     Between in or around April 2008 and in or around December 2010, JOE PALAZZO caused the District to issue more than 30 checks totaling approximately $260,167.22 to SV Company #5 for products and services the District never received.

---

[1]     PNC Bank purchased NCB in October 2008, but all processing of NCB account information and financial transactions remained the same until on or about July 26, 2010, at which time PNC Bank closed all NCB branch offices in the Northern District of Ohio and reopened them as PNC Bank branch offices.   As used herein, "NCB" refers to the bank entity that existed any time on or before July 26, 2010.

6

23.    Between in or around April 2008 and in or around December 2010, SV Owner #3 deposited more than 30 checks totaling approximately $260,167.22 into SV Company #5's US Bank business bank account.

24.    In or around January 2009, SV Owner #2 incorporated SV Company #4.

25.    Between in or around January 2009 and in or around January 2011, JOE PALAZZO caused the District to issue more than 70 checks totaling approximately $648,035.37 to SV Company #4 for products and services the District never received.

26.    Between in or around January 2009 and in or around January 2011, SV Owner #2 deposited more than 70 checks totaling approximately $648,035.37 into SV Company #4's US Bank business bank account.

27.    In or around April 2007, SV Owner #1 incorporated SV Company #3.

28.    On or about May 8, 2009, SV Owner #2 and SV Owner #1 registered SV Owner #2 as the Statutory Agent for SV Company #3.

29.    Between on or about August 12, 2009, and on or about December 28, 2010, JOE PALAZZO caused the District to issue more than 30 checks totaling approximately $268,913.40 to SV Company #3 for products and services the District never received.

30.    Between on or about August 12, 2009, and on or about January 3, 2011, SV Owner #1 and SV Owner #2 deposited more than 30 checks totaling approximately $268,913.40 into SV Company #3's Chase Bank business bank account.

31.     The following chart reflects examples of the fraudulent checks obtained and

deposited in furtherance of this scheme:

| District Check No. | Related Purchase Order No. | Deposit Date | Amount | Check Payee | Bank of Deposit |
|---|---|---|---|---|---|
| 67683 | 49472 | 11/8/2007 | $7,245.00 | SV Company #2 | NCB |
| 68323 | 49850 | 1/18/2008 | $7,500.00 | SV Company #1 | NCB |
| 71543 | 51790 | 1/8/2009 | $31,400.00 | SV Company #2 | NCB |
| 72132 | 52157 | 3/12/2009 | $6,816.00 | SV Company #4 | US Bank |
| 72403 | 52381 | 4/16/2009 | $16,368.00 | SV Company #2 | NCB |
| 73163 | 2010172 | 7/21/2009 | $11,760.00 | SV Company #1 | Chase Bank |
| 73716 | 57001 | 9/21/2009 | $17,136.00 | SV Company #3 | Chase Bank |
| 73718 | 57003 | 9/18/2009 | $8,388.00 | SV Company #5 | US Bank |
| 74317 | 57311 | 11/5/2009 | $8,388.00 | SV Company #5 | US Bank |
| 74555 | 57439 | 12/10/2009 | $14,940.00 | SV Company #3 | Chase Bank |
| 74554 | 57438 | 1/4/2010 | $13,188.00 | SV Company #4 | US Bank |
| 74800 | 57561 | 12/24/2009 | $17,849.99 | SV Company #4 | US Bank |
| 75044 | 57744 | 1/22/2010 | $24,838.00 | SV Company #3 | Chase Bank |
| 76005 | 58024 | 3/18/2010 | $9,599.68 | SV Company #5 | US Bank |
| 77859 | 59077 | 10/27/2010 | $9,800.00 | SV Company #4 | US Bank |
| 78795 | 59464 | 1/19/2011 | $9,630.00 | SV Company #2 | Chase Bank |
| 78796 | 59463 | 1/24/2011 | $7,300.00 | SV Company #1 | Chase Bank |

**The Use of the U.S. Mail**

32.     On or about the dates listed below, JOE PALAZZO, SV Owner #1, SV Owner #2,

and SV Owner #3, for the purpose of executing and attempting to execute the scheme and artifice

to defraud described above, caused the following documents to be delivered and sent through the

United States mail:

| Date | Description of Document | Recipient |
|---|---|---|
| 1/6/2007 | Amendment by Shareholders or Members to Articles of Incorporation for SV Company #1 | Ohio Secretary of State |
| 1/8/2007 | State of Ohio Certificate of Amendment by Shareholders or Members to Articles of Incorporation for SV Company #1 | Ducato & Koesel, Inc. |

8

| 4/26/2007 | Initial Articles of Organization for SV Company #3, a domestic LLC | Ohio Secretary of State |
|---|---|---|
| 4/27/2007 | State of Ohio Certificate of Organization as a domestic LLC for SV Company #3 | SV Owner #1 |
| 8/21/2007 | Initial Articles of Incorporation for SV Company #2 | Ohio Secretary of State |
| 8/22/2007 | State of Ohio Certificate of Incorporation for SV Company #2 | SV Company #1 / SV Owner #1 |
| 2/9/2008 | Initial Articles of Incorporation for SV Company #5 | Ohio Secretary of State |
| 2/11/2008 | State of Ohio Certificate of Incorporation for SV Company #5 | SV Owner #3 |
| 1/10/2009 | Initial Articles of Incorporation for SV Company #4 | Ohio Secretary of State |
| 1/12/2009 | State of Ohio Certificate of Incorporation for SV Company #4 | SV Owner #2 |
| 5/7/2009 | Statutory Agent Update form for SV Company #3 | Ohio Secretary of State |
| 5/8/2009 | State of Ohio Certificate of reflecting updated Statutory Agent for SV Company #3 | SV Owner #2 / SV Owner #1 |
| 9/22/2009 | Fictitious Name/Original Filing for SV Company #3, dba Business #1 | Ohio Secretary of State |
| 9/23/2009 | State of Ohio Certificate of reflecting Business #1 Fictitious Name filing | Legalzoom.com, Inc. |

33.     As a result of the foregoing conspiracy and fraudulent conduct, the District was defrauded and sustained a total loss of at least $3,333,448.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### (Money Laundering Conspiracy, 18 U.S.C. § 1956(h))

34.     Paragraphs 1 through 5 and 9 through 32 of this Information are realleged and incorporated by reference as if fully set forth herein.

35.     From on or about January 12, 2007, through on or about February 11, 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, JOSEPH M. PALAZZO and others,

known and unknown to the United States Attorney, did knowingly and voluntarily, conspire, combine, confederate, and agree together and with each other to knowingly and intentionally conduct and attempt to conduct a series of financial transactions affecting interstate commerce, which transactions involved the proceeds from a specified unlawful activity:  that is, mail fraud, in violation of Title 18, United States Code, Section 1341, knowing that the transactions involved the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal the nature, location, source, ownership, and the control of the proceeds of said unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### Object of the Conspiracy

36.    The object of the conspiracy was to disguise the ultimate recipients of funds stolen from the District that were the proceeds of a conspiracy to commit mail fraud (A) by depositing such funds into the bank accounts of the Shell Vendor Corporations and either using those accounts to pay personal expenditures of the co-conspirators or withdrawing cash and issuing checks from those accounts for the benefit of the co-conspirators, (B) by issuing IRS-Form 1099 Statements to JOE PALAZZO falsely indicating that he had performed services for the Shell Vendor Corporations and was being paid for such services with legitimate funds, and (C) by using those funds to start and operate Business #1.

### Manner and Means

37.    It was part of the conspiracy that SV Owner #1, SV Owner #2, and SV Owner #3 established bank accounts at various financial institutions on behalf of the Shell Vendor Corporations.

10

38.     It was further part of the conspiracy that SV Owner #1, SV Owner #2, and SV Owner #3 deposited District checks that were the proceeds of a mail fraud conspiracy into the Shell Vendor Corporations' bank accounts.

39.     It was further part of the conspiracy that SV Owner #1, SV Owner #2, and SV Owner #3 paid for personal items, withdrew cash, and issued checks from the Shell Vendor Corporations' bank accounts for their own benefit and that of JOE PALAZZO, each receiving approximately fifty percent of the stolen funds.

40.     It was further part of the conspiracy that JOE PALAZZO deposited the checks he received from the Shell Vendor Corporations into various bank accounts that he controlled or negotiated the checks for cash.

41.     It was further part of the conspiracy that SV Owner #1 and SV Owner #2 issued IRS Form 1099 Statements to JOE PALAZZO falsely indicating that he had performed services for SV Company #2, SV Company #1, and SV Company #4 of a kind and in a quantity sufficient to support payments to JOE PALAZZO in the amounts of the checks issued to him from the bank accounts of the respective Shell Vendor Corporations.

42.     It was further part of the conspiracy that JOE PALAZZO claimed the amounts funneled to him through the Shell Vendor Corporations on his tax returns to make it appear as though the funds he received were legitimate income.

43.     It was further part of the conspiracy that SV Owner #1 and SV Owner #2 used funds diverted from the District to SV Company #3 to open and operate Business #1.

11

## Acts In Furtherance of the Conspiracy

### A.    SV Company #1

44.    Between on or about January 12, 2007, and in or around January 2011, SV Owner #1 deposited more than 60 checks, which were the proceeds of funds fraudulently obtained from the District totaling approximately $526,859.00, into SV Company #1's business bank accounts at NCB and Chase Bank to conceal the illegal nature of such funds and to avoid detection by law enforcement.

45.    Between on or about October 21, 2007 and on or about January 14, 2011, JOE PALAZZO and SV Owner #1 caused SV Company #1 to issue checks totaling approximately $115,180.75 to JOE PALAZZO.

46.    On or about December 1, 2007, JOE PALAZZO caused the District to issue check number 68168, dated December 1, 2007, in the amount of $8,645.00, made payable to SV Company #1.

47.    On or about December 27, 2007, SV Owner #1 wrote check No. 4565, dated December 27, 2007, and drawn on the NCB account of SV Company #1, in the amount of $4,323.00, made payable to JOE PALAZZO.

48.    On or about January 11, 2010, JOE PALAZZO caused the District to issue check number 74882, dated January 11, 2010, in the amount of $8,900.00, made payable to SV Company #1.

49.    On or about January 11, 2010, SV Owner #1 wrote check No. 8802, dated January 11, 2010, and drawn on the Chase Bank account of SV Company #1, in the amount of $4,450.00, made payable to JOE PALAZZO.

12

50.    On or about December 15, 2010, JOE PALAZZO caused the District to issue check number 78309, dated December 15, 2010, in the amount of $9,000.00, made payable to SV Company #1.

51.    On or about December 15, 2010, SV Owner #1 wrote check No. 10707, dated December 15, 2010, and drawn on the Chase Bank account of SV Company #1, in the amount of $4,500.00, made payable to JOE PALAZZO.

**B.     SV Company #2**

52.    Between in or around September 2007 and in or around January 2011, SV Owner #1 deposited more than 150 checks, which were the proceeds of funds fraudulently obtained from the District totaling approximately $1,629,472.36, into SV Company #2's business bank accounts at NCB and Chase Bank to conceal the illegal nature of such funds and to avoid detection by law enforcement.

53.    Between on or about September 7, 2009, and on or about January 14, 2011, JOE PALAZZO and SV Owner #1 caused SV Company #2 to issue checks totaling approximately $660,820.57 to JOE PALAZZO.

54.    On or about August 31, 2007, JOE PALAZZO caused the District to issue check number 67005, dated August 31, 2007, in the amount of $9,120.00, made payable to SV Company #2.

55.    On or about September 7, 2007, SV Owner #1 wrote check No. 992, dated September 7, 2007, and drawn on the NCB account of SV Company #2, in the amount of $4,560.00, made payable to JOE PALAZZO.

13

56.     On or about March 18, 2009, JOE PALAZZO caused the District to issue check number 72268, dated March 18, 2009, in the amount of $9,465.00, made payable to SV Company #2.

57.     On or about March 18, 2009, SV Owner #1 wrote check No. 1260, dated March 18, 2009, and drawn on the NCB account of SV Company #2, in the amount of $4,732.00, made payable to JOE PALAZZO.

58.     On or about November 16, 2010, JOE PALAZZO caused the District to issue check number 78042, dated November 16, 2010, in the amount of $9,204.00, made payable to SV Company #2.

59.     On or about November 16, 2010, SV Owner #1 wrote check No. 1472, dated November 16, 2010, and drawn on the Chase Bank account of SV Company #2, in the amount of $4,600.00, made payable to JOE PALAZZO.

**C.     SV Company #4**

60.     Between January 2009 and January 2011, SV Owner #2 deposited more than 70 checks, which were the proceeds of funds fraudulently obtained from the District totaling approximately $648,035.37, into SV Company #4's US Bank business bank account to conceal the illegal nature of such funds and to avoid detection by law enforcement.

61.     Between on or about January 30, 2009 and on or about January 14, 2011, JOE PALAZZO and SV Owner #2 caused SV Company #4 to issue checks totaling approximately $350,784.00 to JOE PALAZZO.

62.     On or about February 27, 2009, JOE PALAZZO caused the District to issue check number 72017, dated February 27, 2009, in the amount of $6,459.00, made payable to SV Company #4.

63.     On or about February 27, 2009, SV Owner #2 wrote check No. 1003, dated February 27, 2009, and drawn on the US Bank account of SV Company #4, in the amount of $3,229.50, made payable to JOE PALAZZO.

64.     On or about January 7, 2010, JOE PALAZZO caused the District to issue check number 74844, dated January 7, 2010, in the amount of $7,620.00, made payable to SV Company #4.

65.     On or about January 11, 2010, SV Owner #2 wrote check No. 1057, dated January 11, 2010, and drawn on the US Bank account of SV Company #4, in the amount of $3,810.00, made payable to JOE PALAZZO.

66.     On or about January 14, 2011, JOE PALAZZO caused the District to issue check number 78797, dated January 14, 2011, in the amount of $6,800.00, made payable to SV Company #4.

67.     On or about January 14, 2011, SV Owner #2 wrote check No. 1103, dated January 14, 2011, and drawn on the US Bank account of SV Company #4, in the amount of $3,400.00, made payable to JOE PALAZZO.

**D.     SV Company #3**

68.     On or about June 22, 2009, SV Owner #1 opened a business bank account for SV Company #3 at Chase Bank and deposited check No. 1140 in the amount of $100, made payable to SV Company #3, which SV Owner #1 issued from SV Company #2's NCB account.

69.     Between on or about August 12, 2009, and on or about January 3, 2011, SV Owner #1 and SV Owner #2 deposited more than 30 checks, which were the proceeds of funds fraudulently obtained from the District totaling approximately $268,913.40, into SV

15

Company #3's Chase Bank business bank account to conceal the illegal nature of such funds and to avoid detection by law enforcement.

70.     On or about August 12, 2009, JOE PALAZZO caused the District to issue check number 73343, dated August 12, 2009, in the amount of $7,268.00, made payable to SV Company #3.

71.     On or about August 12, 2009, SV Owner #1 and SV Owner #2 caused District check number 73343 to be deposited into SV Company #3's Chase Bank business bank account.

72.     On or about August 21, 2009, SV Owner #1 and SV Owner #2 caused SV Company #3 to issue from its Chase Bank business bank account check No. 1001, in the amount of $1,000, made payable to an architecture firm to pay for architectural drawings for a project at Business #1's location.

73.     On or about August 31, 2009, JOE PALAZZO caused the District to issue check number 77316, dated August 31, 2009, in the amount of $9,600.00, made payable to SV Company #3.

74.     On or about September 16, 2009, SV Owner #1 and SV Owner #2 caused SV Company #3 to pay $184 to Legalzoom.com via a debit card purchase from SV Company #3's Chase Bank business bank account for legal document drafting services in relation to Business #1.

75.     On or about September 23, 2009, SV Owner #2 made a filing with the Ohio Secretary of State that registered Business #1 as a fictitious name for SV Company #3 and listed SV Company #3 as Business #1's registered agent.

76.     On or about October 27, 2009, SV Owner #1 and SV Owner #2 caused SV Company #3 to issue check No. 1012, in the amount of $3,500, made payable to the property owner of Business #1's location, with a notation in the memo line stating "Rent Nov."

16

77.     On or about January 19, 2010, SV Owner #1 and SV Owner #2 caused

SV Company #3 to issue check No. 1014, in the amount of $144.91, made payable to a freight

company, with a notation in the memo line stating that it was for delivery of goods to Business #1.

78.     On or about December 28, 2010, JOE PALAZZO caused the District to issue check

number 78424, dated December 28, 2010, in the amount of $5,812.00, made payable to

SV Company #3.

79.     On or about January 3, 2011, SV Owner #1 and SV Owner #2 caused District check

number 78424 to be deposited into SV Company #3's Chase Bank business bank account.

### E.     SV Company #5

80.     Between April 2008 and December 2010, SV Owner #3 deposited more than 30

checks, which were the proceeds of funds fraudulently obtained from the District totaling

approximately $260,167.22, into SV Company #5's US Bank business bank account to conceal

the illegal nature of such funds and to avoid detection by law enforcement.

81.     Between on or about April 5, 2008, and on or about December 21, 2010, JOE

PALAZZO and SV Owner #3 caused SV Company #5 to issue checks totaling approximately

$118,621.04 to JOE PALAZZO.

82.     On or about October 30, 2008, JOE PALAZZO caused the District to issue check

number 70941, dated October 30, 2008, in the amount of $8,249.50, made payable to

SV Company #5.

83.     On or about November 3, 2008, SV Owner #3 wrote check No. 1021, dated

November 3, 2008, and drawn on the US Bank account of SV Company #5, in the amount of

$4,125.25, made payable to JOE PALAZZO.

84. On or about August 31, 2009, JOE PALAZZO caused the District to issue check number 73516, dated August 31, 2009, in the amount of $6,158.28, made payable to SV Company #5.

85. On or about September 3, 2009, SV Owner #3 wrote check No. 1033, dated September 3, 2009, and drawn on the US Bank account of SV Company #5, in the amount of $3,079.14, made payable to JOE PALAZZO.

86. On or about November 30, 2010, JOE PALAZZO caused the District to issue check number 78173, dated November 30, 2010, in the amount of $7,152.00, made payable to SV Company #5.

87. On or about December 2, 2010, SV Owner #3 wrote check No. 1058, dated December 2, 2010, and drawn on the US Bank account of SV Company #5, in the amount of $3,576.00, made payable to JOE PALAZZO.

All in violation of Title 18, United States Code, Section 1956(h).


The United States Attorney further charges:

## COUNT 3
### (Wire Fraud, 18 U.S.C. § 1343)

88. Paragraph 1 of this Information is realleged and incorporated by reference as if fully set forth herein.

18

### The Scheme to Defraud

89.     From in or around January 2007 and continuing through on or about February 11,

2011, in the Northern District of Ohio, Eastern Division, and elsewhere, JOE PALAZZO devised

and intended to devise a scheme and artifice to defraud the District and to obtain money and

property from it by means of false and fraudulent pretenses, representations and promises.

90.     It was part of the scheme and artifice to defraud that JOE PALAZZO purchased

various personal electronic items, such as I-Pads, cameras, and televisions, from legitimate

District vendors, such as Global Gov Ed, CompUSA, Inc., and CDW Government, Inc.

("CDW-G"). JOE PALAZZO then altered the invoices from such purchases to falsely reflect that

classroom items, such as digital microscopes, projectors, and laptop computers, had been

purchased for the District and submitted those invoices to the District for payment.

91.     It was further part of the scheme and artifice to defraud that JOE PALAZZO then

sold the personal electronic items that he purchased to third-parties at a discounted price and kept

the money from such sales for his own personal use.

### The Use of Interstate Wire Communications

92.     On each of the dates set forth below, JOE PALAZZO, for the purpose of executing

and attempting to execute the scheme and artifice to defraud described above, caused to be

transmitted by means of wire communication in interstate commerce, writings, signs, signals,

pictures and sounds, to wit: JOE PALAZZO, while located in the Northern District of Ohio, sent

email communications to and caused email communications to be sent to the Northern District of

Ohio from (A) CompUSA employees, who were located in Dallas, Texas, and (B) CDW-G

employees, who were located in Chicago and Vernon Hills, Illinois, as described below:

19

| Date | Description of Document Sent via Wire | Sender / Location | Recipient / Location |
|------|---------------------------------------|-------------------|----------------------|
| 7/17/2007 | Email requesting payment of past due invoices for purchases of plasma televisions and other electronic equipment | CompUSA / Texas | JOE PALAZZO / Cuyahoga Heights, Ohio |
| 10/1/2007 | Email sending quote for electronic equipment | CDW-G / Illinois | JOE PALAZZO / Cuyahoga Heights, Ohio |
| 3/30/2010 | Email requesting payment of past due invoice for purchases of a GPS and other electronic equipment | CDW-G / Illinois | Mike Rock / Cuyahoga Heights, Ohio |
| 7/19/2010 | Email responding to request for quote for electronic equipment | CDW-G / Illinois | JOE PALAZZO / Cuyahoga Heights, Ohio |

93.     As a result of the foregoing scheme, the District was defrauded and sustained a total loss of at least $76,214.

All in violation of Title 18, United States Code, Section 1343.

### FORFEITURE RELATING TO COUNT 1

94.     The allegations of Count 1 are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).   As a result of the foregoing offense, defendant JOSEPH M. PALAZZO shall forfeit to the United States all property, real and personal, which constitutes, or is derived from, proceeds traceable to the commission of Count 1; including, but not limited to, the following:

(a)     Platinum and Diamond Ring - The ring is a solitaire design fashioned in platinum and weighs 9.09 grams.   Set in the center in a four prong setting is one (1) princess cut diamond weighing 3.02 carats.   The diamond is of VS2 clarity and I in color.   It is an EGL certified diamond number 2708023729.

Case: 1:13-cr-00167-BYP  Doc #: 1  Filed: 03/27/13  20 of 21.  PageID #: 20

20

(b)  MONEY JUDGMENT: defendant JOSEPH M. PALAZZO shall forfeit property, including, but not limited to, a sum of money equal to the proceeds of Count 1.

## FORFEITURE RELATING TO COUNT 2

95.  The allegations of Count 2 are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(1).  As a result of the foregoing offense, defendant JOSEPH M. PALAZZO shall forfeit to the United States all property, real and personal, involved in such offense, and all property traceable to such property.

## SUBSTITUTE PROPERTY

96.  In the event that any property subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and/or 18 U.S.C. § 982(a) (1), as a result of any act or omission of the defendant:

(a)  cannot be located upon exercise of due diligence;

(b)  has been transferred or sold to, or deposited with a third party;

(c)  has been placed beyond the jurisdiction of this Court;

(d)  has been substantially diminished in value; or,

(e)  has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) [as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1) ], to seek forfeiture of any other property of the defendant, up to an amount equivalent to the value of the forfeitable property described above; including, but not limited to, the following:

21

(a)     A check - in the amount of $38,337.42 - which represents the net refund
amount of defendant JOSEPH M. PALAZZO's retirement account with the
School Employees Retirement System of Ohio ("SERS").


_Ann C. Rowland_
ANN C. ROWLAND, CHIEF
MAJOR FRAUD AND CORRUPTION UNIT